# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

FRANK NOVELLO,

    Plaintiff,

v.   Case No. 8:19-cv-1618-KKM-JSS

PROGRESSIVE EXPRESS INSURANCE COMPANY,

    Defendant.
_____/

## **ORDER**

On March 11, 2021, Defendant Progressive Express Insurance Company filed its second omnibus motion in limine with an incorporated memorandum of law to exclude certain evidence.[1] (Doc. 57). Plaintiff Frank Novello filed its response in opposition to Progressive's motion two weeks later. On April 12, 2021, the Court held a pretrial conference with the parties (Doc. 65), where ruled on some of Progressive's motions. (Doc. 67). The Court will now address the remaining motions in limine.

### I.    Background

On June 12, 2013, Matthew Miller hit Lynne Novello with his vehicle while she was crossing the street outside of a crosswalk late in the evening, causing her death.

---

[1] After the Court permitted Progressive to file a second omnibus motion, the Court denied Progressive's first omnibus motion in limine (Doc. 46) as moot in an oral order at the final pretrial conference on April 12, 2021. (Doc. 66).

Frank Novello is the personal representative of Ms. Novello's Estate. Progressive insured Mr. Miller under a policy that provided $10,000 in bodily injury ("BI") liability coverage per person. State Farm, the uninsured and underinsured ("UM/UIM") insurer for the Novellos, tendered its policy limits to the Estate before any lawsuit was initiated. Ms. Novello's Estate then filed a lawsuit against Mr. Miller resulting in an excess final judgment against him in the amount of $119,459.00. After Mr. Miller assigned his rights to the Estate, Frank Novello filed this bad faith suit, seeking to recover the excess final judgment on the grounds that Progressive acted in bad faith in handling Mr. Miller's claim. Progressive denies that it acted in bad faith and that its claim handling caused the excess judgment. Before the pretrial conference, the parties filed motions in limine. The Court ruled on some of the motions orally and reserved ruling on others. The Court now addresses the outstanding motions in this Order.

II.     Motions in Limine

**(1) Motion to Exclude Evidence of State Farm's Subrogation Claim**

On August 23, 2013, approximately two months after the car accident, State Farm sent a letter to Frank Novello offering to settle the UM/UIM claim for the policy limit. Although this created a potential subrogation claim against Mr. Miller, State Farm waived its subrogation rights against Mr. Miller. Progressive moves to preclude any argument that it acted in bad faith by failing to advise Mr. Miller about the potential subrogation claim because (1) such statements are inaccurate in the light of testimony from Progressive's adjuster that she discussed subrogation with Mr. Miller and (2)

2

whether Progressive communicated with Mr. Miller about the potential subrogation claim is irrelevant because there is no causal connection between that communication (or lack of communication) and the excess judgment entered against Mr. Miller because the claim was waived. (Doc. 57 at 5). Novello responds that Progressive "made State Farm's conduct relevant and admissible" when it discussed State Farm in its motion for summary judgment and that the subrogation claim is "just one of the many 'totality of the circumstances' that the bad faith jury will need to consider." (Doc. 60 at 5).

After consideration, the Court grants this motion. Under Florida law, a causal connection must exist "between the damages claimed and the insurer's bad faith." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 903–04 (Fla. 2010). Under these facts, where State Farm waived its subrogation claim against Mr. Miller and no threat of a subrogation suit existed, there is no evidence of a causal connection between the subrogation claim and the excess judgment. *Id.* at 902 (explaining that in equitable subrogation cases, there must be a causal connection between the damages claimed and the insurer's bad faith). And indeed, Novello fails to point to any causal connection. Novello only argues that Progressive acted in bad faith by failing to "ever advise Mr. Miller how he could avoid such subrogation claims." (Doc. 60 at 6; emphasis omitted). But Novello has pointed to no case—and the Court can find none—that states Progressive had a duty to advise Mr. Miller specifically about the potential subrogation claim.

Florida Supreme Court precedent is clear that the "good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). To the extent that Progressive had a duty to advise Mr. Miller about the subrogation claim because it implicated the possibility of an excess judgment or to advise about any steps that Mr. Miller could take to avoid that excess judgment, a causal connection between Progressive's purported bad faith conduct—i.e., not advising Mr. Miller about the potential subrogation claim—and the excess judgment is required. That causal connection simply does not exist here where State Farm never brought a subrogation claim and waived any opportunity to do so. *See Perera*, 35 So. 3d at 902–04. At bottom, the subrogation claim contributed in no way to the excess judgment.

Accordingly, the Court grants Progressive's motion. Any evidence or testimony about State Farm's potential ability to bring a subrogation claim against Mr. Miller is excluded as irrelevant. Indeed, evidence of the subrogation claim does not have any tendency to make the excess judgment entered against Mr. Miller more or less probable than it would without the evidence of the claim. *See* Fed. R. Evid. 401 & 402.

## (2) Motion to Exclude Evidence of State Farm's Claim Handling[2]

Progressive moves to exclude any evidence and testimony regarding State Farm's handling of the claim as the UM/UIM carrier, arguing that such evidence is irrelevant because State Farm and Progressive are two "wholly separate entities addressing separate claims for different forms of insurance coverage." (Doc. 57 at 11). Even if State Farm's claim handling is relevant, Progressive argues that evidence should still be excluded under Federal Rule of Evidence 403 "because its probative value is plainly and substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury as to Progressive's duties to its [i]nsured and why Progressive did not offer its policy limits following its investigation of liability." (*Id.* at 16). Novello argues that the standard and the accompanying duties and obligations for a bad faith claim for the failure to settle is the same for State Farm (the UM/UIM insurer) and its adjusters and Progressive (the BI insurer) and its adjusters, and that State Farm's conduct "is admissible evidence of how a 'reasonabl[y] prudent business person'

---

[2] The Court orally ruled on the portion of Progressive's motion that requested that Kimberly Adkins be precluded from providing "any testimony regarding standards and general policies for claim handling in Florida" (Doc. 57 at 14) at the pretrial conference (Doc. 67). Novello's statements otherwise in his pretrial brief are inaccurate. (Doc. 80 at 5). In an abundance of caution, even if the Court misspoke at the pretrial conference, it now clarifies that Ms. Adkins cannot testify about general standards and policies, which would amount to expert testimony when Novello never proffered an expert, nor can she "describe her liability claims investigation and the reasons for State Farm voluntarily tendering" its policy limits for the reasons described in this section. *Id.* Ms. Adkins's testimony is limited to her conversations with Progressive's adjusters for the purpose of evaluating whether Progressive acted in good faith in its claim handling based on the totality of the circumstances it faced—which includes the information it gained from conversations with Ms. Adkins.

5

actually acted under the 'totality of the circumstances.'" (Doc. 60 at 10–11; emphasis omitted).

After consideration, the Court grants the motion in part. Although evidence that State Farm tendered its policy limits is permissible to show that Novello was willing to settle for some amount, evidence of the manner in which State Farm handled its claim or any argument comparing State Farm's claim handling to Progressive's claim handling is inadmissible.

The critical inquiry in bad faith cases and the question at issue is whether, under the totality of the circumstances, Progressive acted diligently and with the same haste and precision as if it were in the insured's shoes, working on the insured's behalf to avoid excess judgment. *Harvey v. GEICO General Ins. Co.*, 259 So. 3d 1, 7 (Fla. 2018). The manner in which one insurer handles a claim based on the same underlying facts as another insurer could be relevant as a comparison tool to determine how one insurer acted under the totality of the circumstances. But any probative value gleaned from that comparison is outweighed by the danger of unfair prejudice or jury confusion under Rule 403. Allowing evidence of State Farm's claim handling could mislead the jury and permit them to rely on evidence of the manner in which State Farm handled the claim against Mr. Miller and find that any other manner of claim handling—such as the approach used by Progressive—amounts to bad faith. *See Moore v. GEICO General Ins. Co.*, 758 F. App'x 726, 731–32 (11th Cir. 2018) (concluding the district court did not abuse its discretion in determining that the probative value of allowing evidence of

another insurer's claim handling was outweighed by the danger of unfair prejudice and of confusing the issues and misleading the jury under Rule 403).

Allowing argument or even the implication that Progressive acted in bad faith simply because its conduct was different than State Farm is unduly prejudicial to Progressive. This implication is impermissible because "the focus in a bad faith case is . . . on *[the actions] of the insurer in fulfilling its obligations to the insured*" and it is for the jury to decide "whether an insurer has acted in bad faith in handling the claims against the insured . . . under the totality of the circumstances standard." *Harvey*, 259 So. 3d at 7 (emphasis added). Comparing Progressive's methodology to State Farm's claim handling under the circumstances is an oversimplified comparison that could suggest to jurors that only one way existed to handle the claim in this case in good faith, that State Farm acted in good faith, and that any conduct that deviates from State Farm's manner of claim handling amounts to bad faith. That is, because a bad faith claim turns on reasonableness and diligence, not always true, and therefore the comparison could mislead, confuse, or distract the jury from the actual issue before them: whether *Progressive* acted in bad faith. *Moore v. GEICO General Ins. Co.*, Case No. 8:13-CV-1569-T-24, 2017 WL 565028, at *3 (M.D. Fla. Feb. 13, 2017) (granting a motion for new trial where the Court failed to exclude or "put specific limitations on the evidence and argument about [another insurer's] claims handling," reasoning that plaintiff's questions and arguments comparing GEICO and the other insurer's claim handling "unfairly

7

prejudiced GEICO by confusing and distracting the jury from the issue before them—whether GEICO acted in bad faith").

Caselaw also counsels against permitting such evidence; courts have found that allowing evidence of another insurer's claim handling is unduly prejudicial and may confuse the jury. *See, e.g., Hilson v. GEICO General Ins. Co.*, Case No. 8:11-CV-00013-MSS-MAP, 2013 WL 12156414, at *2 (M.D. Fla. Aug. 13, 2013) (granting a motion in limine to exclude evidence of another insurer's claim handling, reasoning such evidence may confuse the jury); *Mendez v. Unitrin Direct Property & Cas. Ins. Co.*, 622 F. Supp. 2d 1233, 1239 (M.D. Fla. 2007) (granting a new trial based, in part, on the admission of evidence of the UM insurer's claim handling because the evidence may have confused the jury and allowed them to find bad faith because the defendant insurer acted differently than the other insurer); *Johnson v. GEICO General Ins. Co.*, 318 F. App'x 847, 850 (11th Cir. 2009) (rejecting as irrelevant the comparison of the claims handling of the BI claim and the UM motorist claim); *United Auto. Ins. Co. v. Estate of Levine ex rel. Howard*, 87 So. 3d 782, 785 (Fla. Dist. Ct. App. 2011). Accordingly, to prevent the undue prejudice and juror confusion, the Court grants in part Progressive's motion to exclude evidence of State Farm's claim handling.

### (3) Motion to Exclude Evidence of Progressive's Claim Handling after Suit was Filed (Relevant Time Period)

In its motion in limine, Progressive moves to exclude "any activity after Plaintiff initiated the underlying lawsuit . . . since any 'opportunity' to settle was foreclosed by

the filing of the lawsuit, as counsel for Plaintiff informed Progressive." (Doc. 57 at 17). Novello responds that the bad faith claim "involve[s] Progressive's action through entry of the Final Judgment" and that the relevant time period should not "just arbitrarily end[ ] when suit was filed." (Doc. 60 at 13). In its trial brief, Progressive argues that Novello must show a causal connection between the insurer's actions or inactions and the excess judgment and that "relevant evidence in the context of bad faith is any evidence which makes it more or less likely that an excess judgment could have been avoided." (Doc. 81 at 22–23). "Once it was too late to settle, no subsequent conduct makes the loss of a prior opportunity more or less likely." (*Id.* at 23). Novello argues that the relevant time period should not be limited because "Progressive's ongoing bad faith conduct continued long after the service of the underlying complaint for liability and damages against" Mr. Miller. (Doc. 80 at 9).

"[T]he gravamen of what constitutes bad faith is whether under all the circumstances an insurer failed to settle a claim against an insured when it had a reasonable opportunity to do so." *Contreras v. U.S. Sec. Ins. Co.*, 927 So. 2d 16, 20 (Fla. Dist. Ct. App. 2006). To determine whether a reasonable opportunity to settle exists, "[t]he insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Bos. Old Colony Ins. Co.*, 386 So. 2d at 785. And "the question of whether an insurer has acted

9

in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004).

Progressive argues that the filing of the lawsuit foreclosed any reasonable opportunity to settle and therefore any evidence after the filing of the lawsuit should not be admitted. The Court largely agrees. Neither in his response in opposition to Progressive's second omnibus motion in limine nor in his trial brief does Novello point to any evidence indicating that a reasonable opportunity to settle existed after Martin Palmer, counsel for the Estate, talked to Progressive's adjuster. Rather, the evidence presented in the parties' briefing indicates that the Estate was unwilling to accept Progressive's policy limits after Progressive and Mr. Palmer's conversation—which occurred on September 24, 2013, after the suit was filed on September 12, 2013.[3] Considering the Estate's flat refusal to accept the policy limits and no evidence showing a break or change in that position throughout the underlying litigation, it does not appear a reasonable opportunity to settle for the policy limits existed after September 24, 2013. Without any evidence to support the existence of a reasonable opportunity to settle, a reasonable jury could not construe Progressive's conduct to have constituted bad faith after September 24, 2013, i.e. that its conduct during that time period contributed to the excess judgment entered against Mr. Miller. The requisite causal connection is absent. *See Perera*, 35 So. 3d at 903–04 (explaining that a "review of the

---

[3] Progressive's claims file notes the conversation with Mr. Palmer and states that Mr. Palmer indicated that "now that he is involved, [the Estate is] never taking our policy limits." (Doc. 15-2 at 26–27).

[Florida] case law demonstrates, there must be a causal connection between the damages claimed and the insurer's bad faith"); *see also McGuire v. Nationwide Assur. Co.*, Case No. 8:11-CV-559-T-24 TBM, 2012 WL 712965, at *9 (M.D. Fla. March 5, 2012) (explaining that an insurer's failure to advise its insured about a settlement opportunity did not result in the excess judgment where the insurer showed that there was no realistic possibility of settling within the policy limit and reasoning that "without causation, there can be no bad faith damages"). Without the requisite causal connection to the excess judgment, evidence of Progressive's claim handling after the opportunity to settle has passed is irrelevant because it does not have any tendency to make the excess judgment entered against Mr. Miller more or less probable. See Fed. R. Evid. 401 & 402.

Accordingly, the Court preliminarily grants Progressive's motion in part. The Court excludes any evidence of Progressive's claim handling after September 24, 2013—the day that the evidence indicates that the Estate, through Mr. Palmer, foreclosed any reasonable opportunity to settle. However, if Novello can proffer evidence from which a reasonable jury could find that an opportunity to settle existed after September 24, 2013, then the Court will reconsider its ruling. The Court grants Novello leave to make such a proffer—by filing such a proffer on the docket after the entry of this Order or by orally making a proffer at the pretrial meeting before jury selection.

### (4) Motion to Exclude Inconsistent or Previously Disclosed Evidence and Testimony Filed in Opposition to Progressive's Motion for Summary Judgment, Primarily as to Kimberly Adkins[4]

In its motion, Progressive argues that the October 27, 2020 affidavit of Kimberly Adkins, which was filed in support of Plaintiff's Response to Progressive's Motion for Summary Judgment should be excluded from evidence at trial because it had "been withheld from discovery and had been specifically included on Plaintiff's Privilege Log on grounds of work-product privilege." (Doc. 57 at 25). Progressive further contends that the affidavit should be excluded at trial "to avoid undue prejudice to Progressive." (*Id.*). Novello responds that using these kinds of affidavits in his response in opposition to summary judgment is authorized by the federal rules and that "Progressive's argument in this section should be summarily denied as all of Progressive's arguments . . . [are] more appropriately the subject of cross-examination or impeachment." (Doc. 60 at 19–20).

After consideration, the Court denies this motion without prejudice as to Ms. Adkins. Progressive has failed to identify exactly how it is prejudiced by the admission of Ms. Adkins's affidavit or what federal rule would prohibit its admission. A generalized reference to "undue prejudice" is not sufficient to exclude evidence under Rule 403. Without such argument, the Court preliminarily denies the exclusion of Ms. Adkins's affidavit. Progressive is permitted to renew its objection at trial. The Court

---

[4] The Court has already ruled on the portion of the motion addressing Mr. Novello and Mr. Miller at the pretrial conference. (Doc. 67).

also defers ruling on whether any such use—outside of impeachment—would violate the rules against hearsay.

Accordingly, it is **ORDERED**:

(1) Progressive's motion to exclude evidence of State Farm's subrogation claim is **GRANTED**.

(2) Progressive's motion to exclude evidence of State Farm's claim handling is **GRANTED-IN-PART**. Evidence that State Farm tendered the policy limits is permissible to show that Novello was willing to settle for some amount, but any evidence of the manner in which State Farm handled its claim or any argument comparing State Farm's claim handling to Progressive's claim handling is excluded.

(3) Progressive's motion to exclude evidence of Progressive's claim handling after suit was filed is **GRANTED-IN-PART.**

(4) Progressive's motion to exclude Kimberly Adkin's affidavit is **DENIED WITHOUT PREJUDICE**.

**ORDERED** in Tampa, Florida, on May 7, 2021.

_Kathryn Kimball Mizelle_
Kathryn Kimball Mizelle
United States District Judge